UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MICHEL KNOX,

        Plaintiff,

    v.                                       Civil  No. 06-459-HA

CITY OF PORTLAND, a                         OPINION and ORDER
municipal corporation,

        Defendant.

———————————————————————

HAGGERTY, Chief Judge:

      Plaintiff Michel Knox brings a Complaint against defendant City of Portland asserting

claims under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, the Americans with

Disabilities Act (ADA), and Oregon law.  Defendant filed a Motion for Summary Judgment [40]

and oral argument was heard on February 8, 2008.  For the following reasons, defendant's

motion is granted in part, and denied in part.

      Defendant also moves to strike [70] various portions of the affidavits of plaintiff, Sean

Rumpel, Gudrun Free, and Dr. Gina Bullock.  In summary judgment proceedings, "[s]upporting

1 - OPINION AND ORDER

and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  However, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of the contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  Based on the parties' submissions, including plaintiff's Supplemental Affidavit [81], the parties' briefing, and the other relevant affidavits and transcripts, the court denies defendant's motion to strike [70].

I.    **BACKGROUND**

The following facts are undisputed unless otherwise noted and are stated in the light most favorable to plaintiff.

Plaintiff began to work for defendant as a Parking Enforcement Officer on October 25, 1999.  Defendant's Concise Statement of Material Facts ("Def. Facts") ¶ 1.  Plaintiff is of African descent, and at all material times, plaintiff was biologically female, although plaintiff was a masculine acting and appearing female.[1]  Plaintiff's Response to Defendant's Concise Statement of Material Fact ("Pl. Facts") ¶ 1-2.

At the commencement of employment, defendant was not aware that plaintiff had any disability that would affect her ability to perform the essential functions of the job.  *Id.* However, plaintiff injured her foot while working in the summer of 2000.  Plaintiff had surgery for this injury on October 4, 2001.  Pl. Facts ¶ 6.

Plaintiff began to have problems with a co-worker, Shelley Knezevich.  Plaintiff asserts that throughout her employment, Knezevich abused her by ignoring her radio dispatch calls,

---

[1] Plaintiff had female-to-male sex reassignment surgery in December 2006.

putting her calls on hold, not transferring her calls, and making plaintiff repeat herself.  Pl. Facts ¶ 7.  Plaintiff asserts that this behavior was targeted at co-workers of color and those who did not conform to gender stereotypes.  *Id.*  Plaintiff also asserts that when she worked in the radio room, Knezevich would harass her to prevent her from working in the radio room, but allowed white, gender-conforming co-workers to socialize in the radio room.  Pl. Facts ¶ 8.  Plaintiff also asserts that she was excessively scrutinized by supervisors, including being followed by two supervisors while on her beat.  Pl. Facts ¶ 11.

On May 27, 2003, plaintiff made her first written complaint to management concerning Knezevich.  Def. Facts ¶ 3.  Plaintiff complained about Knezevich's work performance, and although not in the written complaint, alleges that she also verbally complained that Knezevich was harassing her based on her race and gender status.  Pl. Facts ¶ 4.  Defendant disputes that plaintiff made any mention of her race or gender status.  Def. Facts ¶ 3.  Plaintiff made a similar written complaint on July 3, 2003.  Def. Facts ¶ 5.  Shortly thereafter, on July 7, 2003, Knezevich submitted a complaint to management about plaintiff and another co-worker, Sean Rumpel.  Def. Facts ¶ 6.  On August 20, 2003, plaintiff submitted another complaint regarding Knezevich.  Def. Facts ¶ 7.

On August 27, 2003, Knezevich submitted a second complaint about plaintiff and Rumpel, concerning a paper doll and the associated interaction with it between plaintiff and Rumpel, to which Knezevich objected.  Def. Facts ¶ 8.  Knezevich followed up with two separate emails regarding the paper doll.  Def. Facts ¶ 9.  Manager Anne Larkin investigated Knezevich's complaint, and on October 29, 2003, she concluded that any allegations of harassment could not be substantiated, but that Rumpel and plaintiff would be required to remove the paper doll from the radio room and all three were instructed to read the workplace

3 - OPINION AND ORDER

rules regarding harassment.  Def. Facts ¶ 13-17.  Management did not follow-up on any of plaintiff's complaints until she lodged a formal complaint outside of her Bureau.  Pl. Facts 9.

On September 1, 2003, an announcement was made to all Parking Enforcement Division personnel prohibiting non-work related conduct in the radio room.  Def. Facts ¶ 10.  Plaintiff asserts that although the announcement was made to all personnel, it was specifically targeted at her.  Pl. Facts ¶ 10.  Knezevich complained to management that plaintiff violated the radio room rule.  Def. Facts ¶ 25.  On September 10, 2004, plaintiff was observed with her feet up on a desk in the radio room.  Def. Facts ¶ 25.  On September 14, 2004, management gave plaintiff a copy of the radio room rule.  Def. Facts ¶ 26.  On December 20, 2004, management disciplined a Caucasian employee for conduct in the radio room.  Def. Facts ¶ 27.

On October 19, 2004, plaintiff lodged a formal complaint with the Affirmative Action office of the Bureau of Human Resources, claiming harassment and discrimination.  Pl. Facts ¶ 50.  After conducting several interviews, the Affirmative Action office remanded the investigation to plaintiff's home Bureau, and Larkin took over the investigation.  Def. Facts ¶ 36.  Larkin's investigation continued until January 26, 2005, when she concluded that plaintiff's claims of harassment and discrimination could not be substantiated, but that there were issues regarding communications from the radio dispatch.  Def. Facts ¶ 54.  Larkin issued a letter of expectations to Knezevich, requiring her to participate in training.  Def. Facts ¶ 55.

Plaintiff re-injured her foot, and had second surgery on November 4, 2004.  Pl. Facts ¶ 13.  Plaintiff's doctor stated that plaintiff would be off work for 12 weeks, until January 15, 2005.  Def. Facts ¶ 33.  On January 14, 2005, plaintiff's doctor advised that plaintiff would be off work until February 4, 2005.  Def. Facts ¶ 35.  On February 2, 2005, plaintiff's doctor advised that plaintiff was released to work one hour per day, and to gradually increase, over a four-week

4 - OPINION AND ORDER

period, to four hours per day. Def. Facts ¶ 37. On February 23, 2005, plaintiff's doctor modified

the release to read that plaintiff was released to work beginning February 28, 2005, "mornings

only–one hour on flat beats with a plan to work up to four hours per day as tolerated." *Id.* On

March 23, 2005, plaintiff's doctor released her to work on March 28, 2005, for two hours on flat

beats. *Id.* Plaintiff asserts that she brought in a copy of the doctor's release for management, but

was told that the City Attorney had requested that she call in the release. Pl. Facts ¶ 62. On

April 15, 2005, management told her that there was no work available that met the doctor's

restrictions. Def. Facts ¶ 38. On May 5, 2005, plaintiff's doctor released her to work eight hours

per day on flat beats, and on May 16, 2005, to work full-time on flat beats. Def. Facts ¶ 39-40.

On May 26, 2005, Manager Nolan Mackrill wrote plaintiff asking for clarification of what

constituted a flat beat. Def. Facts. ¶ 66. Mackrill, however, knew what flat beat meant, and

identified them as beat numbers 1, 4, 6, 11, and 22. Pl. Facts ¶ 17. Mackrill also knew that

several beats were mostly flat, including beat numbers 5, 25, and 28. *Id.*

      Plaintiff returned to work on a modified duty assignment, and reported that she continued

to be harassed by Knezevich. Def. Facts ¶ 66-67.

      On June 1, 2005, plaintiff filed two charges of discrimination with the Oregon Bureau of

Labor and Industries (BOLI). Def. Facts ¶ 44. On July 16, 2005, defendant notified plaintiff

that she must make a formal demand for re-employment, ostensibly because her doctor had

released her only to work flat beats. Def. Facts ¶ 71. Plaintiff disputes whether she was disabled

from performing the duties of her regular employment. Def. Facts ¶ 74. On July 26, 2005,

Mackrill denied plaintiff a permanent flat beat assignment, and plaintiff was transferred to non-

paid and no benefit status. Pl. Facts ¶ 18.

      In 1999, when plaintiff began working in the Parking Enforcement Division, Ellie Eaton,

a white, gender-conforming female, worked a flat beat assignment on a permanent basis to accommodate problems with her knee and fibromyalgia. Eaton had this permanent work assignment for several years. Eaton continued in this position until she chose to bid for a scooter position. Pl. Facts ¶ 3. Mackrill was aware that Eaton had been assigned a flat beat as accommodation for a knee injury. Pl. Facts ¶ 66. Mackrill was also aware that several employees had been allowed to work one-hour shifts, although plaintiff's request to work such a shift was denied. Pl. Facts ¶ 24-26.

On August 11, 2005, defendant advised plaintiff of City positions that paid wages comparable to her wage as a Parking Enforcement Officer, which included a Parking Enforcement Officer Deputy position. Def. Facts ¶ 81. Plaintiff filed a third claim of discrimination with BOLI on August 24, 2005. Def. Facts ¶ 87. On October 7, 2005, plaintiff's doctor released plaintiff to "return to full duty." Def. Facts ¶ 88. Plaintiff returned to work as a Parking Enforcement Officer on October 11, 2005, where she was part of the regular beat rotation among all Parking Enforcement Officers. She has been allowed to trade beats with other officers when she is assigned a beat that is too difficult. Def. Facts ¶ 89.

Plaintiff's injuries have resulted in chronic pain, loss of function, loss of tendon strength, and overall weakness in her right foot and leg. Pl. Facts ¶ 19. She is restricted as to both the condition and duration of her walking. Pl. Facts ¶ 20. She cannot walk on significant inclines or uneven surfaces without risk of injury, and she cannot ascend stairs without difficulty. *Id.* Plaintiff permanently requires a supportive brace. Pl. Facts ¶ 21. Because of these restrictions, she believes she is unable to perform any jobs that require extensive walking or climbing without accommodation. Pl. Facts ¶ 22. Defendant disputes that plaintiff needs such accommodation because she has returned to work as a Parking Enforcement Officer.

6 - OPINION AND ORDER

On October 17, 2005, defendant advised plaintiff that her workers compensation claim had been accepted and closed, and that in the course of paying plaintiff "time loss," plaintiff had been overpaid.  Def. Facts ¶ 90.  Records show that plaintiff was off work on workers compensation time loss during the following periods: October 24, 2004 through January 30, 2005; February 2, 2005 through May 17, 2005; and June 30, 2005, through October 9, 2005. Def. Facts ¶ 96.

The EEOC and BOLI issued plaintiff right-to-sue letters for her discrimination claims. Def. Facts. ¶ 91-94.

## II.    ANALYSIS

### A.    Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

On summary judgment, the court must view the facts and draw inferences in the manner most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Defendant, the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence of a genuine issue of material fact from the non-moving party.  *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the "adverse party may not rest upon the mere

7 - OPINION AND ORDER

allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also *Anderson*, 477 U.S. at 248-49. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.,* 690 F.2d 1235, 1238 (9th Cir. 1980).

### B.    Discussion

At the outset, defendant argues that some of plaintiff's evidence of discrimination is time-barred. Plaintiff filed her first two BOLI complaints on June 1, 2005. Thus, her Title VII claims may include incidents occurring more than 240 days earlier (prior to October 4, 2005) only if she can show a continuing violation by demonstrating a common type of discrimination or a common kind of employment action.

The continuing violation doctrine allows courts to consider conduct that would ordinarily be time-barred. *Anderson v. Reno*, 190 F.3d 930, 936 (9th Cir. 1999). A plaintiff first "must demonstrate that the untimely incidents are part of a pattern of discrimination and that the [defendant] continued this pattern into the relevant limitations period." *Id.* A plaintiff can make the requisite showing "by presenting evidence that [defendant] engaged in a 'systematic policy of discrimination' or by presenting evidence of a series of related discriminatory acts directed at her by [the defendant's] personnel." *Id.* (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1455-56 (9th Cir. 1990)); *see also Fielder v. UAL Corp.,* 218 F.3d 973, 987-88 (9th Cir. 2000). In holding that a continuing violation existed, this district has noted that "the many incidents related by [the plaintiff] are serial in nature, spanning several years and all involve the same actor." *Hess v. Multnomah County*, 216 F. Supp. 2d 1140, 1151 (D. Or. 2001).

Here, the plaintiff alleges discrimination on the basis of race and gender stereotype as a

8 - OPINION AND ORDER

result of conduct spanning several years and involving mostly the same actors. Defendant's alleged discriminatory acts prior to the statute of limitations period relate closely enough to those acts within the statute of limitations period to constitute a continuing violation. Therefore, in evaluating plaintiff's claims, the court will consider relevant evidence prior to October 4, 2004.

### 1.    Disparate Treatment Claims

Plaintiff alleges that she was discriminated against based on her race and gender, in violation of Title VII and O.R.S. § 659A.030.[2]   For claims of disparate treatment based on race or gender a plaintiff must first present a prima facie case of discrimination, which creates a presumption of discrimination. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996).   A claim for discrimination based on sex may be asserted on the basis that plaintiff suffered discrimination due to her failure to conform to stereotypes related to sex and gender roles. *See PriceWaterhouse v. Hopkins*, 490 U.S. 228, 250-51 (1989); *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 874-75 (9th Cir. 2001).

To establish a prima facie case, plaintiff must demonstrate that: (1) plaintiff is a member of a protected class, (2) plaintiff was performing her job according to her employer's legitimate expectations, (3) plaintiff was subject to an adverse employment action, and (4) similarly situated persons outside of her protected class were treated more favorably. *Chuang v. Univ. of Cal.*, 225 F.3d 1115, 1123 (9th Cir. 2000).

If plaintiff makes a prima facie case, the burden of production then shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. *Id.*

---

[2]   Employment discrimination claims brought in federal court under O.R.S. § 659A are analyzed under the same framework used to analyze disparate treatment claims under federal law. *Williams v. Fed. Ex. Corp.*, 211 F. Supp. 2d 1257, 1261 (D. Or. 2002).

at 1123-24. If the employer meets this burden of production, "the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 1124 (internal quotations omitted).

Plaintiff has made a prima facie case of discrimination. First, the plaintiff is member of a protected class, as a female of African descent. Second, plaintiff has satisfactorily performed her job throughout her employment. Plaintiff was never reprimanded and did not receive any poor evaluations regarding her work performance. Third, plaintiff suffered an adverse employment action, both as a result of defendant's efforts to impede plaintiff's return to work following surgery, and by defendant's eventual denial of her permanent assignment to a flat beat. By refusing to oblige plaintiff's reasonable requests for an accommodation that plaintiff had previously been allowed, defendant adversely affected plaintiff's employment. Fourth, plaintiff has offered proof that she was treated less favorably than similarly situated individuals. Specifically, Tom Doris, a gender-conforming Caucasian male was allowed to return to work for one-hour per day, after an on-the-job injury. Knezevich, a gender-conforming Caucasian female, was allowed to limit her walking time to one-hour per day after an off-the-job injury. Finally, Ellie Eaton, a gender-conforming Caucasian female, was permitted to work a flat beat assignment on a permanent basis to accommodate problems with her knee and fibromyalgia.

Defendant asserts that plaintiff was not allowed to work for one-hour when other employees were allowed to do so because plaintiff was restricted to working one hour, *in the morning*. This explanation, alone, is unworthy of credence. Defendant gives no reason why a morning requirement was more difficult to accommodate than an unrestricted one-hour requirement. Further, there is no evidence to suggest why defendant could not have asked if

10 - OPINION AND ORDER

plaintiff could work one hour at a different time of day, or whether the time of day was relevant to plaintiff at all.

Finally, plaintiff produces sufficient evidence that defendant's actions were motivated by discriminatory intent. Defendant misinformed the plaintiff regarding the procedures required to return to work, purposefully feigned ignorance of the definition of a flat beat, failed to assist plaintiff in exploring alternatives to a permanent flat beat assignment, placed the plaintiff under excessive scrutiny, and failed to acknowledge plaintiff's complaints of harassment and discrimination by other employees.

Therefore, the court denies defendant's motion as to plaintiff's disparate treatment claims for race and gender discrimination under Title VII and O.R.S. § 659A.030.

### 2.    Retaliation Claims

Plaintiff alleges that she was retaliated against for making complaints to Campbell and human resources regarding sexual and racial harassment. To make out a prima facie case of retaliation, plaintiff must "show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment [action]." *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

Plaintiff has alleged that she made numerous complaints to management regarding inappropriate conduct by Knezevich. Informal complaints to a supervisor constitute protected activity in a retaliation claim. *Passantino v. Johnson & Johnson Consumer Prods. Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). Based on the evidence presented to the court at summary judgment, plaintiff has met her burden that she engaged in protected activity.

Defendant concedes that plaintiff engaged in protected activity, but argues that plaintiff

11 - OPINION AND ORDER

did not suffer an adverse employment action.  As discussed above, however, plaintiff suffered an adverse employment action as a result of defendant's efforts to impede plaintiff's return to work following surgery, as well as defendant's eventual denial of her permanent assignment to a flat beat.

The court next turns to whether there was a causal link between her protected activity and the employment action.  "Causation sufficient to establish . . . [a] prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory [activity]." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). Plaintiff's numerous complaints, specifically her formal complaint to the Affirmative Action office, coupled with the close temporal proximity between her complaints and the difficulties she encountered in attempting to return to work is enough to establish the requisite causal connection.  Therefore, defendant's motion is denied as to plaintiff's retaliation claim.

### 3.    Hostile Work Environment Claims

Plaintiff asserts that defendant subjected her to a sexually and racially hostile work environment.  "To make a prima facie case of hostile work environment, [plaintiff] must show that (1) she was subjected to verbal or physical conduct of a sexual [or racial nature]; (2) this conduct was unwelcome and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive work environment." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quotation omitted).  "Additionally, the working environment must be both subjectively and objectively perceived as abusive." *Id.* "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as

hostile." *Id.* In evaluating the objective hostility of a work environment, the factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nichols*, 256 F.3d at 872 (quotation omitted). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* (quotation omitted).

Plaintiff's prima facie showing turns on whether the alleged actions were pervasive and serious enough to amount to "a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The Supreme Court has cautioned that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (citations and quotations omitted). Viewing the evidence in the light most favorable to plaintiff, the allegations here are both sufficiently pervasive and hostile. Plaintiff repeatedly complained to her supervisors about the abusive treatment she received from Knezevich in the radio room, as well as the difficulties she experienced in performing her job as a result of Knezevich's conduct during radio dispatch calls. Knezevich's conduct over the radio not only interfered with the plaintiff's efforts to do her job, this conduct also posed a threat to her safety. In the radio room, Knezevich would lock up office supplies so plaintiff could not use them, speak harshly to plaintiff and ignore her when she asked questions. Plaintiff also suffered mistreatment from supervisors Sherry Addis and Sue Sloan. They followed the plaintiff as she walked her beat, and when plaintiff asked why she was being followed, Mackrill told her it was because she was "different" and "they don't know what to make of it." Supervisor Sloan also told others that plaintiff could not be trusted and was faking her injury. As a result, plaintiff was required to

13 - OPINION AND ORDER

check in on two floors at the beginning of each shift.

Although much of the harassment experienced by the plaintiff did not include explicit statements of racial or gender animus, there is sufficient proof to establish a genuine issue of material fact as to whether the harassment was directed at the plaintiff because of her race and gender. Plaintiff has offered evidence that she was consistently treated with suspicion as to her work ethic and trustworthiness. *See McGinest v. GTE Serv. Co.*, 360 F.3d 1103, 1116-17 (9th Cir. 2004) (noting that the use of code words or racial stereotyping can, under certain circumstances, violate Title VII). When plaintiff began working as Parking Enforcement Officer, other officers commented that they were terrified of the plaintiff because they did not know if she was male or female. Co-worker Rumpel overheard other employees make comments such as: "what locker will she use; is she a he or a she; is she a lesbian," and "why does she have facial hair?" Rumpel Aff. ¶ 4. Similarly, Gudrun Free, another co-worker, observed that the work environment for the plaintiff was very hostile because of her gender, that other officers threatened by the plaintiff's appearance, and would ask "what is that?" in reference to the plaintiff. Free Aff. ¶ 5. Further, plaintiff offers proof that she was mistreated by Knezevich because of her race and her lack of conformity to gender stereotypes.

Plaintiff has offered sufficient evidence of a hostile work environment and, accordingly, defendant's motion for summary judgment as to plaintiff's hostile work environment claim is denied.

### 4.    Section 1983 Claims

Plaintiff has brought claims of discrimination and retaliation against the defendant for deprivation of her constitutional rights. Plaintiff alleges the denial of her right to equal protection under the Fourteenth Amendment and free speech under the First Amendment.

14 - OPINION AND ORDER

To impose § 1983 liability against a municipality, plaintiff must rely on one of three theories: "(1) that a[n] employee was acting pursuant to an expressly adopted official policy; (2) that a[n] employee was acting pursuant to a longstanding practice or custom; or (3) that a[n] employee was acting as a 'final policymaker.'" *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) (citation omitted). An unconstitutional policy or custom need not be carried out by the municipality's official lawmakers to subject the municipality to liability.  Liability may lie against a municipality for the conduct of those "whose acts or edicts may fairly be said to represent official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  Thus, where final policy-making authority is delegated to an official who then acts pursuant to that delegated authority in a way that causes a constitutional violation, the municipality will be liable for the resulting injury. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988).

Mackrill, acting with authority delegated from the defendant, denied plaintiff's request to work flat beats, and generally impeded plaintiff's return to employment after her surgery.  While the evidence does not decisively show whether Mackrill was following direct orders from defendant's upper management, the evidence does show that at one time the departmental policy allowed assignment to flat beats for injured parking enforcement officers, but that Mackrill did not offer that option to plaintiff.  Considering the facts in the light most favorable to plaintiff, Mackrill was acting as a policymaker with regards to the duties and assignments of Parking Enforcement Officers.  Accordingly, plaintiff has established a genuine issue of material fact as to municipal liability.

To create a genuine issue of material fact regarding her First Amendment retaliation claim, plaintiff must establish a causal connection between a protected activity and an adverse

15 - OPINION AND ORDER

employment action.  Defendant has conceded plaintiff's BOLI complaint and Affirmative Action

office complaint were protected activity, and as discussed above, plaintiff suffered an adverse

employment action.  Further, as described above,  plaintiff's numerous complaints, specifically

her formal complaint to the Affirmative Action office, coupled with the close temporal

proximity between her complaints and the difficulties she encountered in attempting to return to

work is enough to establish the requisite causal connection.  *Yartzoff*, 809 F.2d at 1376..

      For purposes of a motion for summary judgment, the burden-shifting analysis is the same

for both Title VII claims and intentional discrimination claims under § 1983.  *FDIC v.*

*Henderson*, 940 F.2d 465, 471 (9th Cir. 1991).  As such, the court's analysis for plaintiff's

disparate treatment claim, as discussed above, applies to plaintiff's Fourteenth Amendment claim

here.  Plaintiff has made a prima facie case of racial discrimination, defendant's legitimate non-

discriminatory reasons are unworthy of credence, and plaintiff has shown sufficient evidence of

pretext.

      **5.**     **Disability Claims**

      The ADA prohibits discrimination against a qualified individual with a disability.  42

U.S.C. § 12112(a).  The ADA also makes refusing a reasonable accommodation to a qualified

individual and retaliating against an individual for requesting accommodation unlawful.  42

U.S.C. § 12112(b)(5).  Oregon's disability discrimination statute is to be construed, to the extent

possible, in a manner consistent with the ADA.  *Washburn v. Columbia Forest Prods., Inc.*, 134

P.3d 161, 165 (Or. 2006).

      As a threshold issue, defendant asserts that plaintiff cannot establish that she suffers from

a disability.  Under the ADA, a disability may consist of "physical or mental impairment that

substantially limits one or more of the major life activities of such individual."  *McAlindin v.*

*County of San Diego*, 192 F.3d 1226, 1232 (9th Cir. 1999) (quoting 42 U.S.C. § 12102(2)(4)).

Thus, to withstand summary judgment, plaintiff must show that (1) she suffers a physical or

mental impairment, and (2) the impairment substantially limits one or more major life activities.

*Fraser v. Goodale*, 342 F.3d 1032, 1037-38 (9th Cir. 2003).  Plaintiff need not produce medical

evidence regarding her impairment; plaintiff's own testimony will suffice.  *Head v. Glacier*

*Northwest, Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005).  The EEOC regulations explain that a

person is "substantially limited" if she is "[s]ignificantly restricted as to the condition, manner or

duration under which [she] can perform a particular major life activity as compared to the

condition, manner or duration under which the average person in the general population can

perform that same major life activity."  29 C.F.R. § 1630.2(j)(1)(ii).  Factors to be considered as

to whether the impairment substantially limits a major life activity include: the impairment's

nature and severity; the impairment's duration; the permanent or long-term impact, or the

expected permanent or long-term impact of the impairment.  29 C.F.R. § 1630.2(j)(2).

Here, plaintiff alleges that she is substantially limited in the major life activities of

walking, standing, running, climbing, and working due to the impairment to her right foot.

Plaintiff asserts that she cannot walk on significant inclines and that she is constantly at risk of

re-injury or aggravation that would render her immobile.  She permanently requires a supportive

brace to prevent further injury and to provide stability.  Plaintiff has suffered from this

impairment for seven years, and according to her doctor, the pain will continue indefinitely.

Plaintiff asserts that she is so limited as to climbing and walking that she had to sell her three-

story house, as to avoid stairs.  She contends that she is prevented from performing a broad class

of jobs, such as letter carrier, meter reader, laborer, and delivery driver, without accommodation.

Defendant, however, notes that plaintiff returned to work without accommodation in

17 - OPINION AND ORDER

October 2005 as a Parking Enforcement Officer, which requires walking up to 15 miles per day. Plaintiff acknowledges that she has returned to work, but asserts that she trades beats with other employees when possible, as to avoid assignments with steep inclines. While it is clear that plaintiff has lingering difficulties with her right foot, the court cannot conclude that plaintiff is significantly limited in any of the alleged major life activities. Plaintiff cannot show that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794-95 (9th Cir. 2001).

Accordingly, defendant's motion for summary judgment as to plaintiff's ADA claim and state disability discrimination claim is granted.

### 6.    Worker's Compensation Claim

Plaintiff must establish the following elements to make a prima facie case for discrimination on the basis of filing a workers compensation claim: "(1) that the plaintiff invoked the workers' compensation system; (2) that the plaintiff was discriminated against in the tenure, terms or conditions of employment; and (3) that the employer discriminated against the plaintiff because he or she invoked the workers' compensation system." *Williams v. Freightliner, LLC*, 100 P.3d 1117, 1121 (Or. App. 2004) (quotation omitted).

Plaintiff has offered sufficient proof from which a jury could infer that she was discriminated against for filing a workers compensation claim. Plaintiff filed two workers compensation claims after injuries to her right foot, which required surgery. After the first surgery, she was allowed to work a flat beat indefinitely, but after the second surgery, her request for a flat beat was limited to sixty days, and then was denied permanently. Further, she was not allowed to use the radio room after her second surgery, pursuant to an unevenly-applied

18 - OPINION AND ORDER

department rule.  This evidence raises a genuine issue of material fact as to whether plaintiff was discriminated against because she filed a workers compensation claim.

Accordingly, defendant's motion for summary judgment as to plaintiff's claim for discrimination based on filing a workers compensation claim is denied.

## III.    CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [40] is GRANTED in part and DENIED in part.  Defendant's motion is GRANTED as to plaintiff's disability discrimination claims pursuant to the ADA and O.R.S. 659A.100.  Defendant's motion is DENIED as to plaintiff's Title VII claims, accompanying state race and gender discrimination claims, claims under 42 U.S.C. §1983, and workers compensation discrimination claim.

IT IS SO ORDERED.

DATED this  5   day of March, 2008.


      /s/ Ancer L. Haggerty
        Ancer L. Haggerty
      United States District Judge

19 - OPINION AND ORDER